HUNTER, JR., Robert N., Judge.
Shakita Necole Walton ("Defendant") appeals from judgment entered revoking Defendant's probation and activating her suspended sentences of imprisonment. The judgment entered included a conviction on two probation violations with underlying convictions of possession with intent to sell and/or deliver cocaine and selling of a schedule II controlled substance under N.C. Gen. Stat. § 90-95.
I. Factual and Procedural Background
On 20 January 2015, a Chowan County Grand Jury indicted Defendant for two counts of possession with intent to sell or deliver cocaine and two counts of sale or delivery of cocaine.
On 4 April 2016, in Chowan County Superior Court before Judge Jerry R. Tillett, Defendant pled guilty to one count each of selling cocaine and possession with intent to sell or deliver cocaine. In exchange for Defendant's plea, the State dismissed charges of possession with intent to sell or deliver a schedule II controlled substance in case file 14 CRS 50403, sale of a schedule II controlled substance in case file 14 CRS 50404, and charges of possession with intent to sell or deliver a controlled substance within 1000 feet of a public park in case files 14 CRS 50401-02.
On the charge of selling cocaine in case file 14 CRS 50403, Judge Tillett imposed a suspended consecutive sentence of 10 to 21 months imprisonment, and placed Defendant on supervised probation for 36 months.
On 12 October and 14 October 2016, Chowan County Probation Officer Terrance Murrill filed probation violation reports in Chowan County Superior Court. The reports alleged Defendant violated the conditions of her probation by absconding.
On 24 May 2017, a probation violation hearing occurred in Chowan County Superior Court before Judge Wayland Sermons, Jr. Judge Sermons found Defendant violated the conditions of probation by absconding from supervision. Judge Sermons revoked Defendant's probation and activated her suspended sentences of imprisonment.
During the 24 May 2017 hearing, the State called Justin Rodgers, a probation officer in Chowan County, to the stand.[1] Officer Rodgers stated he knew Defendant "[f]rom contacts with probation[,]" and he "had her on [his] case load at least once." Officer Rodgers testified Officer Murrill filed violation reports in Defendant's case. Concerning Defendant's first violation of absconding, Officer Rodgers stated: "[D]efendant left her residence at 306 Boswell Street, Edenton, North Carolina 27932 on or about September 6th, 2016 and failed to notify her probation officer of her whereabouts." He further testified Defendant "was unable to be located ... with reasonable efforts." When the State asked Officer Rodgers what caused the probation department to go look for Defendant on 6 September 2016, Defendant objected on confrontation grounds. Defendant contended Officer Rodgers was "alleging what [Officer Murrill] did." Defendant further argued, "[i]f [Officer Rodgers] [is] going to allege what [Officer Murrill] did[,] then [Defendant] has a right to cross-examine [Officer Murrill]." The trial court overruled Defendant's objection.
Officer Rodgers explained in the instance a probation officer leaves the county or department for any reason, "cases will be moved to another officer." Officer Murrill was "working in [the Chowan County] office on a temporary basis[,]" and "[h]e returned to his home assigned office and the case was assigned to [Officer Rodgers]." Officer Rodgers further testified probation reports generally include a record of
[a]ny contact with someone on probation, any contact with someone relative to that, whether he's someone in the community or law enforcement ... any record checks, any information that really has to do with their case whatsoever is normally put in the system, as well as any attempted contacts or attempts made by the officer.
Contained in the report for each narrative are "[t]he time and date of the incident, the officer that inputs it, what kind of contact it would have been, be it just general or home contact, telephone, and the information itself[.]" The reports are records kept in the regular course of business in the probation department.
Defendant asked the trial court for permission to question Officer Rodgers. The court allowed Defendant's question. Defendant asked Officer Rodgers if it is department policy to include "every communication that is made by the probation officer to the probationer ... on [the] business record[?]" Officer Rodgers explained it is department policy to include information regarding contact that "has to do with the probationer" in the record.
Again on direct examination by the State, Officer Rodgers testified Officer Murrill attempted to contact Defendant on 6 September 2016 about Defendant's "fail[ure] to report to a court hearing" in Chowan County. The file also noted "a call from the Craven County Sheriff's Department relating to information on a pending charge[.]"
Officer Rodgers testified that on 19 September 2016, Officer Murrill went to Defendant's home. Defendant was not there. While at the home, Officer Murrill spoke with Defendant's mother. Later that day, Defendant called Officer Murrill. Officer Murrill told Defendant "she needed to report to the office ASAP and [Defendant] told him she would report on the 21st of September [2016]." Defendant did not attend the scheduled meeting.
Defendant contacted Officer Murrill again on 22 September 2016. Officer Murrill scheduled her for an office visit the following day. On 23 September 2016, Defendant telephoned Officer Murrill and told him "she had a job interview in New Bern" and would not visit the office. Officer Murrill again rescheduled Defendant to report on 26 September 2016. Officer Rodgers testified Officer Murrill made a note "he believed that [Defendant] may be avoiding supervision." Defendant again did not report on 26 September 2016.
Officer Murrill returned to Defendant's home on 28 September 2016. Defendant was not present at the home. Officer Murrill "left a note for her to call or report." While at the home, Officer Murrill spoke with Defendant's son. Defendant's son stated he "had not seen [Defendant] in three and a half weeks." On 3 October 2016, Officer Murrill prepared a violation report for Chief Probation Officer Lawrence to review.
On 15 November 2016, Defendant was in court "for some other pending charges[.]" Officer Rodgers testified that at this court date Defendant informed Officer Lawrence "she wanted to transfer to Craven County."
Defendant's last office appointment occurred on 24 August 2016. Officer Murrill was unable to locate Defendant for supervision from 24 August 2016 until Officer Lawrence encountered her in court on 15 November 2016. The State asked Officer Rodgers if Defendant ever communicated to him she had "a new address in Craven County." Defendant objected. The trial court overruled Defendant's objection.
On 17 November 2016, Officer Rodgers attempted to contact Defendant by her listed number, which was disconnected. On 23 November 2016, Defendant was in custody in both Craven and Pasquotank counties, for other pending charges.
On cross-examination, Officer Rodgers testified the "first contact" he made with Defendant's case was on 27 November 2016. Officer Rodgers performed a "record check" which "show[ed] that [Defendant] had three unserved warrants from Pasquotank County for-two counts of larceny, one possession of stolen property."
Defendant's probation violation report was filed on 14 October 2016. Officer Murrill gave Officer Rodgers "the run down that [Officer Murrill] had tried to get in contact with [Defendant] and he couldn't and that it was an absconder case."
Defendant was called as a witness on her own behalf. Defendant agreed Officer Murrill was her probation officer. Defendant stated she talked to Officer Murrill "every week or every week and a half on the cell phone." Defendant stated Officer Lawrence never told her she was in danger of being in violation for absconding. She further stated Officer Murrill "didn't have any issues" with her. Defendant testified as follows:
[Officer Murrill] just told me I needed to stay in contact with him by phone. He understood I was working and that I worked long hours and he knew by the time I got back in town as long as I spoke to him on the phone that would be okay as long as he heard from me, because if he didn't hear from me it would be a problem.
Defendant stated the longest period of time she had gone without speaking to Officer Murrill was two weeks. Defendant testified she spoke with Officer Murrill and Officer Lawrence about transferring her probation. Defendant told the officers "[her] life and [her] children's lives were in danger and [she] needed to move." When asked what Officer Murrill's reply was, the State objected on hearsay grounds, claiming "He is here, not a business record." The Court overruled the State's objection and stated, "[t]his is a probation violation, I'll hear it all."
Defendant testified Officer Murrill did not have any issues with her moving, and he asked her to get the new address for him. Defendant told Officer Murrill she "didn't know exactly what the address of the house would be but [she] could get it." Defendant stated she also talked to Officer Lawrence about moving, and "he didn't have a problem with it[.]"
Defendant started working in Craven County. Defendant had orientation at her new place of work so "[she] spoke with [Officer] Murrill then[,] and [she] didn't come in for a visit with him on that day and he rescheduled[.]" The State asked Defendant about several dates found in the violation reports. When specifically asked about her whereabouts on 21 September 2016, Defendant responded:
I can't say about all of those dates because I re-schedule so many dates, it was just dates-there would be times when [Officer] Murrill would tell me that he was coming by and they didn't come and have me standing outside looking crazy or looking out the window just waiting for him when I could have been doing other things, so I don't know.
Further, Defendant indicated Officer Lawrence never notified her she was in danger of being an absconder, stating Officer Lawrence has "always been up front with me like he's cool."
On cross-examination by the State, Defendant stated "[w]hatever court dates [she] had[,] [she] made them except the one[.]" The State asked Defendant about prior convictions, and Defendant acknowledged she had "[b]asically" been convicted of so many charges, she could not keep track.
The State next called Officer Lawrence to the stand. Officer Lawrence testified his conversations with Defendant "were not cordial." Officer Lawrence stated Officer Murrill gave him the violation reports concerning Defendant. Officer Lawrence explained the probation violation reports were issued because "[Officer Murrill] could not get up with [Defendant]." Officer Lawrence further noted Officer Murrill's inability to contact Defendant occurred "repeatedly." Both probation officers discussed Defendant's case in full and Officer Lawrence approved the violation reports, based on Officer Murrill's unsuccessful "efforts to locate [Defendant]." According to Officer Lawrence, Officer Murrill relayed Defendant "would constantly call [Officer Murrill] ... and not come to the appointments." After Officer Lawrence's approval of the violation reports, Defendant "got in contact with [Officer Lawrence.]" Officer Lawrence told Defendant "she would be arrested on site." The conversation with Defendant was not "pleasant" because Defendant would not tell Officer Lawrence where she was at the time.
Officer Lawrence noted at the hearing the "next time [he] saw [Defendant] was in court." On that court date, Defendant told Officer Lawrence she had informed Officer Murrill she wanted to transfer her probation to Craven County. Officer Lawrence told Defendant "that was bull." Officer Lawrence testified he did not have a conversation with Defendant about transferring prior to that court date. He further never told Defendant it would be "fine" to transfer. Officer Lawrence told Defendant her probation "was going to be revoked if [he] had anything to do with it."
Officer Murrill came to Officer Lawrence "regularly just venting" about "getting frustrated with [Defendant] constantly." Further, Officer Lawrence "knew [Defendant] was on the run for pending charges because there was a picture of her on WITN News." Consequently, he "knew [Defendant] wasn't coming in because of [those] pending charges."
Following Officer Lawrence's testimony, the State and Defense rested. The trial court then asked "why [it] should not find that [Defendant] absconded ... supervised probation." Counsel for Defendant maintained Defendant remained in constant contact with her probation officer, and explained "absconding means that [the probationer] just go[es], you don't hear from [the probationer.]" In response, the State asserted, "when you cannot actively supervise a person, you can't know their whereabouts." Therefore, the State asserted probation officers cannot simply supervise someone over the phone, but rather the probationer must "make [herself] available for supervision."
After closing statements and consideration of the evidence, the trial court found Defendant willfully absconded supervised probation. The trial court subsequently revoked Defendant's probation and activated her suspended sentence.
On 2 June 2017, Defendant filed written notice of appeal. On 13 February 2018, Defendant filed a petition for writ of certiorari.
II. Jurisdiction
We must first address whether our Court has jurisdiction. Defendant concedes she failed to provide proper notice of appeal under Rules 4 and 26 of the Rules of Appellate Procedure. Rule 4 provides a Defendant's notice to this Court in criminal cases may be taken by "(1) giving oral notice of appeal at trial, or (2) filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order ...." N.C. R. App. P. 4(a) (2017). Rule 26(b) provides "[c]opies of all papers filed by any party and not required by these rules to be served by the clerk shall, at or before the time of filing, be served on all other parties to the appeal." N.C. R. App. P. 26(b) (2017).
Here, Defendant filed a written notice of appeal. Defendant failed to comply with Rule 4, however, for the following reasons: (1) Defendant failed to correctly designate the name of the party appealing;[2] (2) Defendant entered the incorrect date of the judgment from which the appeal is being taken; and (3) Defendant "did not designate the judgments as judgments revoking [her] probation and activating her suspended sentence." Further, Defendant failed to provide proper filing and service under Rule 26 by "not stat[ing] the date on which the district attorney's office was served with the notice of appeal[.]" Therefore, Defendant's notice of appeal is ineffective, under Rules 4 and 26. Because of these jurisdictional deficiencies, Defendant asks this Court to grant a writ of certiorari, authorized by N.C. Gen. Stat. § 15A-1444(e) (2017).
The petition for writ of certiorari must demonstrate merit or that some error was likely committed at the trial level. See State v. Bishop , --- N.C. App. ----, ----, 805 S.E.2d 367, 369 (2017) ; State v. Rouson , 226 N.C. App. 562, 564, 741 S.E.2d 470, 471 (2013). A decision concerning whether to grant a writ is discretionary, and, thus, "the Court of Appeals may choose to grant such a writ to review some issues that are meritorious but not others for which a defendant has failed to show good or sufficient cause." State v. Ross , 369 N.C. 393, 400, 794 S.E.2d 289, 293 (2016).
Jurisdiction lies in this Court pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure, which provides for appellate review under the extraordinary writ of certiorari. N.C. R. App. P. 21(a)(1) (2017). In deciding whether Defendant shows "good and sufficient cause" to grant her petition, we look to her arguments on appeal. Because Defendant presents a meritorious argument, discussed infra , we hereby grant her petition for a writ of certiorari.
III. Standard of Review
On appeal, Defendant presents three arguments of error. Defendant first argues the trial court erred in revoking Defendant's probation without providing her proper notice of a violation. Second, Defendant argues the trial court erred in denying her the right to cross-examine Officer Murrill at the violation hearing. Third, Defendant claims her case must be remanded in order to correct clerical errors within the findings. [Def. Br. 16-40]
A hearing to revoke a defendant's probationary sentence only requires that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended. The judge's finding of such a violation, if supported by competent evidence, will not be overturned absent a showing of manifest abuse of discretion.
State v. Young , 190 N.C. App. 458, 459, 660 S.E.2d 574, 576 (2008) (citation and quotation marks omitted). "When the State presents 'competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms.' " State v. Melton , --- N.C. App. ----, ----, 811 S.E.2d 678, 680 (2018) (quoting State v. Talbert , 221 N.C. App. 650, 652, 727 S.E.2d 908, 910-11 (2012) ).
We review a trial court's decision to revoke a defendant's probation for an abuse of discretion. State v. Miller , 205 N.C. App. 291, 293, 695 S.E.2d 149, 150 (2010) (citation omitted). "A trial court abuses its discretion 'when a ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " Melton , --- N.C. App. at ----, 811 S.E.2d at 680 (quoting State v. Murchison , 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014) ). Probation may be revoked if a defendant (1) commits a criminal offense in any jurisdiction in violation of N.C. Gen. Stat. § 15A-1343(b)(1) ; (2) absconds by willfully avoiding supervision or by willfully making her whereabouts unknown to the supervising probation officer, in violation of § 15A-1343(b)(3a) ; or (3) violates any condition of probation after previously serving two periods of confinement in response to violations pursuant to § 15A-1344(d)(2). N.C. Gen. Stat. § 15A-1344(a) (2017) ; see State v. Moore , 370 N.C. 338, 340, 807 S.E.2d 550, 552 (2017) (citation omitted). Only the second of these statutorily enumerated violations, absconding from supervision, is at issue on appeal.
IV. Analysis
A. Notice
Before revoking a defendant's probation, a trial court must conduct a violation hearing, unless the defendant waives the right to a hearing. N.C. Gen Stat. § 15A-1345(e) (2017). The hearing should determine whether the defendant's conduct merits revocation of her probation. Id . The State "must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged." Id. ; Moore , 370 N.C. at 340, 807 S.E.2d at 552. The purpose of the statutory mandate "is to allow the defendant to prepare a defense and to protect the defendant from a second probation violation hearing for the same act." State v. Hubbard , 198 N.C. App. 154, 158, 678 S.E.2d 390, 393 (2009) (citation omitted).
We first consider Defendant's argument the trial court erred in revoking her probation without providing proper notice of a violation. Specifically, Defendant argues the State presented evidence at Defendant's probation violation hearing that was not alleged in the violation reports, and for which Defendant did not receive statutorily required notice pursuant to N.C. Gen. Stat § 15A-1345(e). Further, Defendant argues the violation reports were insufficient to establish Defendant absconded from supervision; thus, the trial court erred by revoking Defendant's probation based in part on evidence of conduct for which Defendant did not receive proper notice. We agree.
In State v. Moore , our Supreme Court considered whether defendant received adequate notice of his probation revocation hearing pursuant to N.C. Gen. Stat. § 15A-1345(e). After making a contested oral finding, the trial judge then entered written judgments finding defendant violated her probation by absconding from supervision, as alleged in the violation reports, which the judgments incorporated by reference. Moore , 370 N.C. at 345, 807 S.E.2d at 552. The Court held defendant received notice of the specific behavior alleged to be in violation of his probation where the report included "[a] statement of pending criminal charges[.]" Id. at 345, 807 S.E.2d at 555. With this conclusion, the Court stated, "notice of the factual allegations-the specific behavior-that constituted the violation was enough." Id . at 342, 807 S.E.2d at 553 ; see also Hubbard , 198 N.C. App. at 158, 678 S.E.2d at 394 (holding the State complied with the statutory notice requirement where the report "set forth the specific facts that the State contended constituted the violation" despite the facts possibly having "been ambiguously stated in the [violation] report[.]").
In State v. Melton , this Court considered whether the trial court erred when it considered, during defendant's probation violation hearing, evidence up until the date of defendant's arrest, though the probation violation reports alleged absconding during a prior, specific time frame. Melton , --- N.C. App. at ----, 811 S.E.2d at 681. We acknowledged the need for probation violation reports to "contain a statement of the specific violations alleged," in order to meet the requisites of N.C. Gen. Stat. § 15A-1345(e). Id. at ----, 811 S.E.2d at 681. We also noted, however, after making a contested oral finding the trial court then "entered written judgments finding defendant violated her probation by absconding from supervision, as alleged in the violation reports, which the judgments incorporated by reference." Id. at ----, 811 S.E.2d at 681. The written findings were more favorable to defendant than those announced from the bench, and we thus considered them as reflective of the trial court's will. Id. at ----, 811 S.E.2d at 681.
Our review, therefore, is whether there was sufficient evidence to support a finding Defendant absconded in violation of N.C. Gen. Stat. § 15A-1343(b)(3a) based on the specific facts contained in the violation reports. For the following reasons, the evidence here was insufficient.
"Presently, 'abscond' is defined by statute, and a defendant on supervised probation only absconds when he 'willfully avoid(s) supervision' or 'willfully makes his whereabouts unknown to his supervising probation officer.' " Melton , 811 S.E.2d at 681 (quoting N.C. Gen. Stat. § 15A-1343(b)(3a) (alterations omitted) ). Pursuant to the statutory definition, "we have held that a defendant absconds when he willfully makes his whereabouts unknown to his probation officer, and the probation officer is unable to contact the defendant." Id. at ----, 811 S.E.2d at 681 (citing State v. Trent , --- N.C. App. ----, ----, 803 S.E.2d 224, 232, temporary stay allowed , 370 N.C. 78, 802 S.E.2d 725 (2017) ).
Defendant argues the evidence at her hearing as to her absconding "did not establish the same facts that were alleged in the violation reports." Defendant asserts the violation reports "did not include a 'statement of the actions' contained" in testimony from Officer Rodgers and Officer Lawrence. She further claims "the State presented evidence of conduct that occurred after the last violation reports were filed[,]" and this was "irrelevant and should not have been considered in evaluating whether [Defendant] absconded."
The State argues, conversely, the violation reports set forth facts consistent with the testimony offered by the State at the hearing, and also consistent with the trial court's finding Defendant absconded. On this basis the State contends "plain language in the violation reports" provided clear notice of the State's contention that Defendant's probation officer could not locate her.
Defendant's probation violation reports filed on October 12 and October 14 include the following notice of absconding:
1. Regular Condition of Probation: "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that, THE DEFENDANT LEFT HER RESIDENCE AT 306 BOSWELL STREET EDENTON N.C. 27932 ON/ABOUT SEPTEMBER 6, 2016 AND HAS FAILED TO NOTIFY HER PROBATION OFFICER OF HER WHEREABOUTS. THE DEFENDANT HAS FAILED TO BE LOCATED WITHIN REASONABLE EFFORTS.
2. "Report as directed by the Court, Commission or the supervising officer to the officer at reasonable times and places ..." in that, THE DEFENDANT FAILED TO REPORT TO HER PROBATION OFFICER ON THE FOLLOWING DATES: SEPTEMBER 1, 2016, SEPTEMBER 21, 2016, SEPTEMBER 23, 2016 AND SEPTEMBER 26, 2016[.]
Officers Rodgers and Lawrence testified at Defendant's probation violation hearing, however, to conduct not stated in Officer Murrill's violation reports. Thus, Defendant received no notice as to that conduct, contravening N.C. Gen. Stat. § 15A-1345(e).
Specifically, the violation reports did not include facts contained in certain testimony from the hearing regarding: conduct occurring between the dates of 24 August to 15 November 2016, during which Defendant could not be located; Defendant's failure to report to a court date on 6 September 2016, during which Officer Murrill learned Defendant had a pending charge; Defendant's absence during Officer Murrill's home visit on 19 September 2016; Defendant's absence during Officer Murrill's home visit on 28 September 2016, during which Defendant's son reported he had not seen his mother in three and one-half weeks; Defendant's phone not being in service on 17 November 2016, when Officer Rodgers tried to reach her; Defendant's custody on 23 November 2016 for pending charges in Craven and Pasquotank Counties; Defendant's unserved warrants from Pasquotank County for two counts of larceny and one count of possession of stolen property, obtained by Officer Rodgers's record check on 27 November 2016; and Defendant's failure to provide probation with her new address, and Officer Lawrence's testimony that he "knew [Defendant] was on the run for pending charges" and "knew [Defendant] wasn't coming in [to the probation office] because of pending charges[,]" occurring after 15 November 2016. Despite three objections by Defendant's counsel to Officer Rodgers's testimony and one to Officer Lawrence's testimony, the trial court considered "all the evidence" and found Defendant "willfully absconded from supervised probation."
Further supporting Defendant's lack of notice, the written judgments of the trial court did not find Defendant absconded supervision as alleged in paragraph 1 of the violation reports. Unlike Moore , in which the judgments incorporated the allegations by reference, the trial court's written judgment in this case provided Defendant no notice of the violations in paragraph 1.
In revoking Defendant's probation, the trial court erroneously relied, at least in part, on the State's evidence at the revocation hearing. The evidence from Defendant's hearing did not establish the same facts alleged in the violation reports. The violation reports lacked the specificity of facts required by our jurisprudence in Moore , Hubbard, and Melton . For the above reasons, the trial court abused its discretion in revoking Defendant's probation based on 15A-1343(b)(3a).
B. Clerical Errors
Defendant requests her case be remanded to correct three clerical errors found in the 24 May 2017 judgment and findings. This Court has held a clerical error is "an error resulting from a minor mistake or inadvertence, [especially] in writing or copying something on the record, and not from judicial reasoning or determination." State v. Lark , 198 N.C. App. 82, 95, 678 S.E.2d 693, 702 (2009) (citation omitted). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." State v. Smith , 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citation and quotation marks omitted).
Defendant argues the written judgment in case files 14 CRS 50404 shows Defendant violated conditions of probation in paragraphs 2, 3, 4, and 5. Defendant asserts the violation reports in the same case do not contain an allegation in paragraph 5. Therefore, Defendant argues the finding of a violation alleged in paragraph 5 should be deleted from the record. Our look at the record shows the violation reports from both 12 October 2016 and 14 October 2016 contain a paragraph 5 for the written judgment in 14 CRS 50403 which states in pertinent part: "THE DEFENDANT WAS COURT ORDER[ED] TO SERVE 60 DAYS IN JAIL AND HAS COMPLETED 0 JAIL DAY AT TIME OF VIOLATION." There is no such paragraph 5 found in case file 14 CRS 50404. Despite the absence of paragraph 5 in 14 CRS 50404, our review of the testimony shows defendant admitted, at the 24 May 2017 hearing, to violating paragraph 5 in both violation reports. Regardless of this admission, the trial court erred in finding Defendant violated paragraph 5, given this paragraph did not exist in the report for case file 14 CRS 50404.
Secondly, Defendant asserts the written judgments in case files 14 CRS 50403-04 indicate Defendant violated the conditions of her probation "as stated in the October 3, 2016 and October 14, 2016 violation reports[;]" however, the reports were filed on 12 October and 14 October 2016. Therefore, Defendant requests the judgments be remanded in order to reflect "the reports were filed on October 12, rather than October 3, 2016." The record shows the violation report filed on 13 October was initially prepared on 3 October 2016. The violation reports were then filed on 12 October 2016 and 14 October 2016. Thus, the written judgments in case files 14 CRS 50403-04 incorrectly state Defendant violated the conditions of her probation as stated in the 3 October 2016 and 14 October 2016 violation reports.
Lastly, Defendant argues the trial court erred in not "checking" boxes 5 or 5(a) on the written judgments in case files 14 CRS 50403-04. Defendant asserts these boxes "contain the written finding that the trial court may revoke the defendant's probation for absconding" and therefore, the written judgment should be amended to reflect this. The trial court failed to select box 5(a), which would have indicated the trial court revoked Defendant's probation "for the willful violation of the condition(s) that he/she not" abscond from supervision. See Turner , --- N.C. App. at ----, 803 S.E.2d at 232 (remanding defendant's case to correct clerical errors where the trial court failed to select a box in the findings, which would have indicated the court " 'was reasonably satisfied in its discretion that the defendant violated' " the absconding condition, as the court found at the hearing and erroneously selected another box, indicating defendant waived a violation hearing.). See also Lark , 198 N.C. App. at 95, 678 S.E.2d at 703 (affirming the trial court's revocation of defendant's probation but remanding for correction of clerical errors where the trial court inadvertently failed to mark the appropriate box.).
Defendant has noted clerical errors, as described. "When, on appeal, ... it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." Trent , --- N.C. App. at ----, 803 S.E.2d at 232-33 (citation and quotation marks omitted).
V. Conclusion
There was insufficient competent evidence to establish notice of Defendant's probation violation pursuant to N.C. Gen. Stat. § 15A-1343(b)(3a). Therefore, the trial court abused its discretion in revoking defendant's probation based on § 15A-1343(b)(3a). The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion, including correcting clerical errors.
REVERSED; REMANDED.
Report per Rule 30(e).
Judges ELMORE and ZACHARY concur.

Officer Murrill was Defendant's initial probation officer. Officer Rodgers was later assigned to Defendant's case. During the course of Officer Rodgers's testimony, he read from a printout of Officer Murrill's narratives and notes.

Defendant testified at the hearing her surname is "Long," not "Walton." While the judgments of the trial court refer to "Walton," Defendant's notice of appeal refers to "Long."